UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA                    CIVIL ACTION

VERSUS                                       NO: 12-920

BOLLINGER SHIPYARDS, INC., BOLLINGER         SECTION: R(5)
SHIPYARDS LOCKPORT, L.L.C., AND
HALTER-BOLLINGER JOINT VENTURE,
L.L.C.

### ORDER AND REASONS

Before the Court is the government's motion for review of Magistrate Judge Chasez's August 28, 2013 order granting Bollinger's motion to compel.[1] The Court grants the motion because the government's supplemental production has largely mooted this dispute and because the Magistrate Judge failed to provide sufficient justification for her order requiring the government to produce the documents over which it had claimed attorney-client or work product privileges.

## I.   BACKGROUND

The United States filed this action under the False Claims Act, 31 U.S.C. § 3729, *et seq.*, alleging that Bollinger Shipyard Inc., Bollinger Shipyard Lockport, LLC, and Halter Bollinger Joint Venture, LLC (collectively "Bollinger") knowingly submitted false statements and false claims for payment to the government in relation to a government contract under which Bollinger was to

_____

[1] R. Doc. 104.

modify eight vessels owned by the United States Coast Guard.[2]

The government provided Bollinger with its first set of privilege logs on March 15, 2013. Bollinger challenged the government's assertions of attorney-client and work product privileges arguing that the government failed to provide sufficient information in the privilege logs for Bollinger to evaluate the merit of such claims. At a discovery status conference on May 1, 2013, the Magistrate Judge intervened and ordered the government to revise its privilege log with respect to documents over which the government claimed attorney-client or work product privileges.[3] The Magistrate Judge ordered the government to complete this task by May 10, 2013.[4] The government failed to meet this deadline and, at a May 13, 2013 discovery conference, the Magistrate Judge extended the government's deadline to May 17, 2013.[5] The Magistrate Judge also authorized Bollinger to follow up on this order "with further motion practice."[6] On May 17, 2013, the government failed to produce the revised privilege logs and instead

---

[2] R. Doc. 1.

[3] R. Doc. 101 at 1 ("To the extent that the government has agreed to revise its privilege log with respect to any documents as to which it asserted attorney-client or work product privileges, it is to do so by May 10, 2013. Otherwise, the defendants are to file the appropriate motion.").

[4] *Id.*

[5] R. Doc. 104 at 2.

[6] *Id.*

filed a motion for an extension of time.[7]  The Magistrate Judge granted the motion over Bollinger's objection and gave the government until June 3, 2013 to produce the revised logs.  The Magistrate Judge granted the continuance with the understanding that "no further extensions will be granted."[8]

On June 3, 2013, the government produced its revised privilege logs.  Bollinger found the revised logs deficient with respect to 776 attorney-client and work product privilege claims, contending that the government failed to provide sufficient information to justify the privileges asserted.  Bollinger also contested the government's work product claims for documents generated before the government's implementation of a litigation hold.  Bollinger attempted to resolve the dispute without court intervention to no avail.[9]  Thus, on August 13, 2013, Bollinger filed a motion to compel the government to produce the 776 documents for which the government allegedly failed to provide sufficient justification.[10]

The government responded arguing that all of its privilege claims were well-founded.[11]  The government also highlighted that some of the challenged entries actually identified an attorney as

---

[7] R. Doc. 107.

[8] R. Doc. 116 at 2.

[9] R. Doc. 132-2 at 43, 47.

[10] R. Doc. 132.

[11] R. Doc. 138.

the sender or recipient, namely the Coast Guard Judge Advocate
General's office, and therefore these claims were sufficient as a
matter of law.[12]   In its reply memorandum, Bollinger withdrew its
challenges to the Coast Guard Judge Advocate General's office
documents, but maintained that the remainder of Bollinger's
privilege log entries were deficient.[13]

On August 28, 2013, the Magistrate Judge issued the following
minute entry order:

> Given the voluminous nature of the documents in question
> and the vagueness of a number of the government's
> privilege log entries, within two (2) weeks the
> government is to identify the documents via a new,
> separate range of bates numbers and is to provide a copy
> thereof to the defendants in an attempt to narrow down
> the number of documents that are truly privileged. This
> production shall be subject to the terms of the
> protective order and shall not constitute a waiver of any
> applicable privileges.   If the defendants anticipate
> utilizing any of those documents at any upcoming
> depositions they shall so advise the government
> beforehand.[14]

On September 11, 2013, the government filed the instant motion
for review of the Magistrate Judge's August 28, 2013 order.[15]   In
its memorandum in support, the government argues that the
Magistrate Judge's order requiring the government to produce all of
the contested documents is contrary to law because (1) the ruling

---

[12] *Id.* at 6.

[13] R. Doc. 141 at 4 n.1.

[14] R. Doc. 142 at 2.

[15] R. Doc. 143.

was based on the "erroneous legal conclusion" that a privilege log claiming attorney-client or work product privileges is deficient as a matter of law if it does not identify an attorney as an author or recipient, (2) the Magistrate Judge erroneously concluded that documents produced prior to a litigation hold cannot be protected by the work product doctrine, and (3) the Magistrate Judge erroneously concluded that the proper remedy is for the government to produce the withheld documents to Bollinger.[16]

On March 12, 2015, the government filed a supplemental memorandum in support of its motion for review.[17]   In this memorandum, the government informed the Court that it had undertaken "an extensive document by document re-review" of the withheld documents.[18]   As a consequence of this re-review, the government produced 357 documents previously withheld as privileged and provided Bollinger with detailed revisions to the privilege logs clarifying the basis for withholding each privileged document.[19]   Bollinger responded arguing that the revised log contains "at least two dozen entries that do not involve attorneys and do not state any other justification for applying the privilege" and objected to the government's continued withholding

---

[16] R. Doc. 143-1 at 1.

[17] R. Doc. 181-1.

[18] *Id.* at 1.

[19] *Id.* at 1-2.

of communications with employees of the American Bureau of Shipping."[20]  On March 26, 2015, the government withdrew its claims of privilege as to the American Bureau of Shipping documents.[21] Thus, the parties original dispute over 776 documents has been whittled down to a contest over approximately two dozen privilege log entries.  Nevertheless, despite the resolution of all but approximately two dozen claims, Bollinger urges the Court to deny the government's motion for review and enforce the Magistrate Judge's August 28, 2013 order requiring the government to produce all 776 of the challenged documents.[22]

## II.  STANDARD OF REVIEW

Federal law affords a magistrate judge broad discretion in the resolution of non-dispositive discovery disputes.  Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(A).  Nevertheless, a party dissatisfied with a magistrate judge's ruling may appeal to the district court for review.  Fed. R. Civ. P. 72(a).  When a timely objection is raised, the district judge must review the magistrate's ruling and "modify or set aside any part of the order that is clearly erroneous or contrary to law."  *Id.*  Under this highly deferential standard, a magistrate judge's ruling "should

---

[20] R. Doc. 179 at 6.

[21] R. Doc. 185-2 at 7.

[22] R. Doc. 185-1.

not be rejected merely because the court would have decided the matter differently." *Ordemann v. Unidentified Party*, CIV. A. No. 06-4796, 2008 WL 695253, at *1 (E.D. La. Mar. 12, 2008) (internal quotation omitted). Instead, the decision must be affirmed unless "on the entire record [the court] is left with a definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948).

## III. ANALYSIS

Rule 26(b)(5) governs claims of privilege and instructs:

> When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the must: (1) expressly make the claim; and (2) describe the nature of the documents, communications, or tangible things not produced or disclosed--and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

Fed. R. Civ. P. 26(b)(5). "The party resisting discovery by asserting a privilege bears the burden of proof sufficient to substantiate its privilege claim and cannot rely on a blanket assertion of privilege." *Woodard v. Andrus*, Civ. A. Nos. 03-2098, 06-0257, 2008 WL 2540600, at *3 (W.D. La. June 20, 2008) (citations omitted). To claim the protection of either attorney-client or the work-product privileges, "a privilege log must contain sufficient information to allow the court or the opposing party to assess the applicability of the privilege." *Taylor Energy Co., L.L.C. v. Underwriters at Lloyd's London Subscribing to Ins. Coverage*

7

*Evidence by Policy No. HJ109303*, Civ. A. No. 09-6383, 2010 WL 3952208, at *1 (E.D. La. Oct. 7, 2010). Accordingly, a privilege log should provide "a specific explanation of why the document is privileged." *Allendale Mut. Ins. Co. v. Bull Data Sys., Inc.*, 145 F.R.D. 84, 88 (N.D. Ill. 1992).

The Court begins by noting that the government's re-review and supplemental production has rendered this dispute largely moot. As stated above, the government conducted a "re-review" of all the withheld documents and has provided Bollinger with approximately half of the documents subject to the Magistrate Judge's August 28, 2013 order. The government also revised its privilege logs for the documents it maintains are privileged. That Bollinger now only contests approximately two dozen entries, as opposed to the 776 documents originally contested, demonstrates the government's substantial, though unjustifiably late, compliance with Rule 26. Thus, in light of the government's supplemental production and revised privilege logs, the Court finds that enforcement of the Magistrate Judge's August 28, 2013 order is no longer warranted.

Even if this dispute were not mooted by the government's supplemental production and revised privilege log, the Court would still be compelled to set aside the Magistrate Judge's order. Bollinger moved to compel the production of 776 documents allegedly protected by the attorney-client or attorney work product privileges. Despite the attorney-client privilege's status as the

"oldest of the privileges for confidential communications known to the common law," *Willy v. Admin. Review Bd.*, 423 F.3d 483, 495 (5th Cir. 2005), the Magistrate Judge ordered the government to produce all of the documents without conducting an *in camera* review or otherwise addressing the parties' arguments. Instead, the Magistrate Judge based its order on the "voluminous nature" of the documents at issue and the "vagueness of some" of the government's privilege log entries.[23]   The Magistrate Judge's unreasoned opinion has left the Court, and the parties,[24] guessing as to the legal basis for the order.   That an unspecified "some" of the government's privilege log entries were insufficiently vague does not justify forcing the government to produce all of the contested documents. *See Am Nat't Bank & Trust Co. of Chi. v. Equitable Life Assurance Soc'y of U.S.*, 406 F.3d 867, 878-79 (7th Cir. 2005) (district court abused discretion by compelling disclosure of approximately 400 documents after finding that four of twenty documents examined were not privileged).   This is especially true given Bollinger's concession that its challenge to the Coast Guard Judge Advocate General's office documents were not well-founded.[25]

---

[23] R. Doc. 142 at 2.

[24] *See, e.g.,* R. Doc. 143-1 at 2 ("The Magistrate Judge seemingly adopted each of the defendant's arguments . . . .").

[25] R. Doc. 141 at 4 n.1 ("Bollinger was not aware that 'CG-094' is the Coast Guard Judge Advocate General's office . . . [and] is willing to withdraw its claim with respect" to that privilege claim.).

The Magistrate Judge's order made no accommodation for this concession and ordered the blanket production of all 776 documents.

Additionally, that Bollinger challenged a large number of the government's privilege claims is not valid basis for ordering the government to produce all of the contested documents. The proper method for evaluating the propriety of a party's privilege claim is to examine the privilege log and conduct an *in camera* review of the challenged documents. *See Kerr v. U.S. Dist. Ct. for N. Dist. of Cal.*, 426 U.S. 394, 405 (1976) ("[A]n *in camera* review of the documents is a relatively costless and eminently worthwhile method to insure that the balance between petitioner's claims of . . . privilege and plaintiffs' asserted need for the documents is correctly struck."); *In re Grand Jury Proceedings*, 220 F.3d 568, 571 (7th Cir. 2000) ("Only when the district court has been exposed to the contested documents and the specific facts which support a finding of privilege under the attorney-client relationship for each document can it make a principled determination as to whether the attorney-client privilege in fact applies."); *In re BankAmerica Corp. Secs. Litig.*, 270 F.3d 639, 644 (8th Cir. 2001) ("[D]istrict courts should be highly reluctant to order disclosure without conducting *in camera* review of allegedly privileged materials."). If the number of challenged documents is too numerous to allow for document-by-document examination, courts may employ "a statistically sound protocol for sampling" withheld documents to

determine the validity of a party's overall privilege claims. *Vioxx Prod. Litig. Steering Committee v. Merck and Co., Inc.*, Civ. A. Nos. 06-30378, 06-30379, 2006 WL 1726675, at *2 n.5 (5th Cir. May 26, 2006). *See also Am Nat't Bank & Trust Co. of Chi.*, 406 F.3d at 879 (district court abused discretion by compelling disclosure of approximately 400 documents when district court allowed opposing party to cherry-pick twenty contested privilege log entries for review). The Magistrate Judge's order makes no mention of a "statistically sound protocol for sampling" the challenged documents, and her conclusion that "some" of the government's privilege claims were vague does not justify the production of all the withheld documents. It appears that, because of the "voluminous" nature of the challenged documents, the Magistrate Judge did not comply with her duty to review the challenged documents. This was error. Accordingly, the Court vacates the Magistrate Judge's August 28, 2013 order requiring the government to produce all 776 of the contested documents.

The Court recognizes, however, that in producing previously withheld documents and revising its privilege logs, the government has effectively conceded that Bollinger's motion to compel was well-founded. Indeed, as noted above, the government has produced approximately half of the documents it originally withheld. Further, it did so only after the Magistrate Judge repeatedly ordered the government to provide Bollinger with revised privilege

logs,[26] and nearly two years after the court-ordered deadline.[27]
Thus, although the Court vacates the Magistrate Judge's order
compelling the government to produce all 776 of the previously
withheld documents, the Court nevertheless finds that Bollinger is
entitled to the costs, including reasonable attorney's fees, it
incurred in litigating this issue. *See* Fed. R. Civ. P. 37(a)(5)
("If the motion [to compel] is granted--or if the disclosure or
requested discovery is provided after the motion was filed--the
court must, after giving an opportunity to be heard, require the
party or deponent whose conduct necessitated the motion . . . to
pay the movant's reasonable expenses incurred in making the motion,
including attorney's fees."). Thus, within 14 days of this order,
Bollinger is to file an appropriate motion under Rule 37(a)(5),
which shall be referred to Magistrate Judge Michael North for a
report and recommendation.

The Court further orders that if Bollinger intends to
challenge the approximately "two dozen" documents in the
government's revised privilege log, it must file the appropriate
motion before Magistrate Judge North which identifies the documents
in question.

---

[26] *See* R. Docs. 101, 104, and 116.

[27] R. Doc. 116 ("The government is granted until June 3,
2013 within which to revise its privilege log and make its
production.  No further extensions will be granted.").

12

IV.  **CONCLUSION**

For the foregoing reasons, the government's motion for review of the Magistrate Judge's August 28, 2013 order is GRANTED.[28]  The Magistrate Judge's order[29] is hereby vacated, but the government is ordered to pay Bollinger's attorneys' fees and costs in an amount to be determined hereafter.

New Orleans, Louisiana, this  13th  day of April, 2015.

_____

SARAH S. VANCE

UNITED STATES DISTRICT JUDGE

---

[28] R. Doc. 143.

[29] R. Doc. 142.

13