UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA                    CIVIL ACTION

VERSUS                                      NUMBER: 12-0920

BOLLINGER SHIPYARDS, INC., ET AL.           SECTION: "R"(5)

**FINDINGS AND RECOMMENDATION**

Before the Court for findings and recommendation to the District Judge is an application for court-awarded attorneys' fees filed by Defendants, Bollinger Shipyards, L.L.C.; Bollinger Shipyards Lockport, L.L.C.; and Halter-Bollinger Joint Venture, L.L.C. ("Bollinger).  (Rec. doc. 194).  The Plaintiff, United States of America (the "government") opposed the application (rec. doc. 199) and Bollinger filed a reply memorandum.  (Rec. doc. 204).  Oral argument on the application was held on May 13, 2015.  (Rec. doc. 205).

This application for attorneys' fees arises out of an order of the District Judge concerning the government's appeal of the Magistrate Judge's order on a discovery motion filed by Bollinger on August 13, 2013.  (Rec. doc. 132).[1]

I.    **BACKGROUND FACTS AND PROCEDURAL HISTORY**

The underlying dispute that gives rise to the present fee application began when the government produced its first of many privilege logs in response to Bollinger's written discovery.[2]  The government provided Bollinger with its first privilege log on March 15, 2013.  In that log, the government asserted attorney-client, work product, "deliberative

---

[1]  The Magistrate Judge who presided over that motion and issued the subject order has since retired and the matter has been referred to the undersigned.

[2]  This factual and procedural account is derived primarily from the District Judge's order and reasons of April 13, 2015 that referred this matter to the undersigned.  (Rec. doc. 192).

process" and "source selection" privileges.  Bollinger challenged the government's assertions of all of these claimed privileges, arguing that the government had failed to provide sufficient information in the privilege logs for Bollinger or the Court to evaluate the merit of those claims.  In the face of Bollinger's challenge, the government ultimately withdrew its claims of "deliberative process" and "source selection" privilege.

At a discovery status conference on May 1, 2013, the Magistrate Judge intervened and ordered the government to revise its privilege log with respect to documents over which the government claimed attorney-client or work-product privileges by May 10, 2013.[3]  The government failed to meet this deadline and, at a May 13, 2013, discovery conference, the Magistrate Judge extended the government's deadline to May 17, 2013. The Magistrate Judge also authorized Bollinger to follow up on this order "with further motion practice."  (Rec. doc. 104 at p. 2).

On May 17, 2013, the government failed to produce the revised privilege logs and instead filed a motion for an extension of time.  The Magistrate Judge granted the motion over Bollinger's objection and gave the government until June 3, 2013 to produce the revised logs.  The Magistrate Judge granted the continuance with the understanding that "no further extensions will be granted."  (Rec. doc. 166 at p. 2).  On June 3, 2013, the government produced its revised privilege logs.  Bollinger found the revised logs deficient with respect to 776 attorney-client and work-product privilege claims, contending again that the government failed to provide sufficient information to justify the privileges

---

[3]  Rec. doc. 101 at p. 1 ("To the extent that the government has agreed to revise its privilege log with respect to any documents as to which it asserted attorney-client or work product privileges, it is to do so by May 10, 2013.  Otherwise, the defendants are to file the appropriate motion.").

asserted.  Bollinger also contested the government's work-product claims for documents generated before the government's implementation of a litigation hold.

Bollinger attempted to resolve the dispute without court intervention, to no avail.[4] Thus, on August 13, 2013, Bollinger filed a motion to compel the government to produce the 776 documents for which the government allegedly failed to provide sufficient justification.  (Rec. doc. 132).  The government responded by arguing that all of its privilege claims were well-founded.  The government also highlighted that some of the challenged entries actually identified an attorney as the sender or recipient, namely the Coast Guard Judge Advocate General's office, and therefore these claims were sufficient as a matter of law.  In its reply memorandum, Bollinger withdrew its challenges to the Coast Guard Judge Advocate General's office documents, but maintained that the remaining privilege log entries were deficient.

On August 28, 2013, the Magistrate Judge issued the following minute entry:

> Given the voluminous nature of the documents in question and the vagueness of a number of the government's privilege log entries, within two (2) weeks the government is to identify the documents via a new, separate range of bates numbers and is to provide a copy thereof to the defendants in an attempt to narrow down the number of documents that are truly privileged.  This production shall be subject to the terms of the protective order and shall not constitute a waiver of any applicable privileges.  If the defendants anticipate utilizing any of those documents at any upcoming depositions they shall so advise the government beforehand.

(Rec. doc. 142).

On September 11, 2013, the government filed a motion for review of the Magistrate Judge's August 28, 2013 order, arguing that requiring the government to produce all of the contested documents was contrary to law because:  (1) the ruling was based on the

_____

[4] *See* rec. doc. 132-2 at pp. 43, 47.

"erroneous legal conclusion" that a privilege log claiming attorney-client or work-product privileges is deficient as a matter of law if it does not identify an attorney as an author or recipient; (2) the Magistrate Judge erroneously concluded that documents produced prior to a litigation hold cannot be protected by the work product doctrine; and (3) the Magistrate Judge erroneously concluded that the proper remedy is for the government to produce the withheld documents to Bollinger.  (Rec. doc. 143).

On March 12, 2015, the government filed a supplemental memorandum in support of its motion for review, in which it informed the Court that it had undertaken "an extensive document by document re-review" of the withheld documents and that, as a consequence of this re-review, it had produced 357 documents previously withheld as privileged and provided Bollinger with detailed revisions to the privilege logs clarifying the basis for withholding each privileged document.  (Rec. doc. 181-1).  Bollinger responded, arguing that the revised log contains "at least two dozen entries that do not involve attorneys and do not state any other justification for applying the privilege" and objected to the government's continued withholding of communications with employees of the American Bureau of Shipping.  (Rec. doc. 179).  On March 26, 2015, the government withdrew its claims of privilege as to the American Bureau of Shipping documents.

Thus, by the time the District Judge reached the merits of the motion for review, the parties' original dispute over 776 documents had been whittled down to a contest over approximately two dozen privilege log entries.  Nonetheless, despite the narrowing of the dispute, Bollinger urged the Court to deny the government's motion for review and enforce the Magistrate Judge's August 28, 2013 order requiring the government to produce all 776 of the challenged documents.

The District Judge ultimately declined Bollinger's invitation and granted the government's motion because its supplemental production had largely mooted the dispute and because the Magistrate Judge had failed to provide sufficient justification for her order requiring the government to produce the remaining two dozen or so documents over which it had claimed attorney-client or work-product privileges.

The District Judge recognized, however, that:

> in producing previously withheld documents and revising its privilege logs, the government has effectively conceded that Bollinger's motion to compel was well-founded.  Indeed, as noted above, the government has produced approximately half of the documents it originally withheld.  Further, it did so only after the Magistrate Judge **repeatedly** ordered the government to provide Bollinger with revised privilege logs, and nearly two years after the court-ordered deadline.  Thus, although the Court vacates the Magistrate Judge's order compelling the government to produce all 776 of the previously withheld documents, the Court nevertheless finds that Bollinger is entitled to the costs, including reasonable attorney's fees, it incurred in **litigating this issue**.

> (Rec. doc. 188 at pp. 11-12)(citing Fed. R. Civ. P. 37(a)(5))(emphasis added).

## II.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 37 provides that:

> [i]f the motion [to compel] is granted ... the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees.

> Fed.R.Civ.P. 37(a)(5)(A).

The analysis to be undertaken by this Court in evaluating Bollinger's fee application is well-established:   the "most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."  *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939 (1983).  The product of this calculation is called the lodestar.  *Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir.), *cert. denied sub nom.* 516 U.S. 862, 116 S.Ct. 173 (1995).   There is a "strong" presumption that the lodestar calculation produces a reasonable fee.  *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552, 130 S.Ct. 1662, 1673 (2010).

Once the lodestar has been determined, the Court must then consider the applicability and relative weight of the 12 factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974).  While the Court may make upward or downward adjustments to the lodestar figure if the *Johnson* factors so warrant, the lodestar is presumptively correct and should be modified only in exceptional cases.  *See Watkins v. Fordice*, 7 F.3d 453, 459 (5th Cir. 1993).

After calculation of the lodestar, the burden shifts to the party opposing the application to contest the reasonableness of the hourly rate requested and/or the reasonableness of the hours expended ". . . by affidavit or brief with sufficient specificity to give [the] fee applicants notice . . ." of those objections.  *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3rd Cir. 1990).

III.    **ANALYSIS**

A.    *Reasonable Hourly Rate*

Under lodestar jurisprudence, the "appropriate hourly rate" is "the market rate in the community for this work." *See, e.g.*, *Black v. SettlePou, P.C.*, 732 F.3d 492, 502 (5th Cir. 2013); *see also Blum v. Stenson*, 465 U.S. 886, 895 n. 11, 104 S.Ct. 1541, 1547 n. 11 (1984) (holding that reasonable fees "are to be calculated according to the prevailing market rates in the relevant community" "for similar services by lawyers of reasonably comparable skill, experience and reputation").  "[T]he Supreme Court has been silent on how to determine the 'relevant community' under ... any ... fee-shifting statute." *Bywaters v. United States*, 670 F.3d 1221, 1228 (Fed. Cir. 2012) ("[T]he Supreme Court has advised that all federal fee-shifting statutes calling for an award of 'reasonable' attorneys' fee should be construed 'uniformly'").  The Fifth Circuit has long held that the <u>normal</u> starting point for calculating the lodestar is the prevailing rate in the forum, while nonetheless recognizing that an exception to this "forum" rule applies where "abundant and uncontroverted evidence prove[s] the necessity of . . . turning to out-of-district counsel" in a particular matter.  *Id.* at 382.  *McClain v. Lufkin Indus., Inc.*, 649 F.3d 374, 381, 382 (5th Cir.), *cert. denied*, __ U.S. __, 132 S.Ct. 589 (2011)(listing cases).  The applicability of this exception is a key question here.

A serious point of contention with respect to the present application is whether Bollinger is entitled to fees based upon the reasonable hourly rate of its Washington D.C.-based attorneys, as opposed to the prevailing rates in the Eastern District of Louisiana. Bollinger requests that the Court apply Washington D.C. rates in the calculation of the lodestar, while the government – notably through its Washington D.C.-based counsel –

argues that Bollinger should be limited to forum rates.  If "abundant and uncontroverted evidence prove[s] the necessity" of Bollinger employing out-of-district counsel in this matter, then Bollinger is entitled to a reasonable rate in the Washington D.C. area.  For the reasons that follow, this Court finds that Bollinger has satisfied its burden of proof in this regard.

Importantly, the government originally filed this suit against Bollinger in the United States District Court for the District of Columbia on July 29, 2011.  (Rec. doc. 1).  According to the record and to the first of two declarations of Bollinger's counsel, Mark Sweet, filed in support of this application, the complaint was filed after a years-long government investigation, which involved several substantive meetings with Bollinger employees and counsel in Washington D.C.  (Rec. docs 194-1 at p. 5; 194-2 at ¶ 11).

While it is true that Bollinger successfully moved to transfer the matter to this court, it did so only after retaining and enrolling as counsel of record attorneys of the Washington D.C. law firm Wiley Rein who, according to Mr. Sweet's declarations, possess a particular expertise in federal procurement fraud and federal False Claims Act ("FCA") litigation that is not to be found in the New Orleans market.  (Rec. docs. 194-2 and 202-3).  It was this set of attorneys that successfully moved the original court to transfer the matter here and it is the same set of attorneys who, some 10 days after transfer, successfully moved the District Judge here to dismiss the claims of the original complaint.  (Rec. docs. 27 (motion) and 71 (order granting motion)).  As well, it is this group of attorneys who have litigated the discovery disputes that are at the center of this fee application since their genesis.

It is not insignificant in the context of the current fee application that every step of the way in this case, Department of Justice ("DOJ") lawyers based in Washington D.C. have

taken the laboring oar on behalf of the government.  From the original investigation, to the filing of the complaint, to opposing Bollinger's motion to dismiss, to litigating the underlying discovery dispute, to opposing this fee application, DOJ counsel from Washington D.C. have taken the lead.[5]  Even at oral argument on this application, the attorney who appeared and argued the government's position that Bollinger is unjustified in relying upon Washington D.C. counsel hales from Washington D.C.  The totality of these circumstances makes it extremely difficult for this Court to credit that argument.

The Court finds that the information and procedural history that can be gleaned solely from the docket sheet in this case demonstrates that it was both appropriate and necessary from the initiation of this matter for Bollinger to retain out-of-district counsel with both expertise and experience in federal procurement fraud and FCA litigation.  Additional, <u>uncontroverted</u> evidence submitted by Bollinger reinforces this conclusion.

As for the record evidence submitted by the parties in connection with this fee application, the Court notes that Bollinger's counsel, Mr. Sweet, submitted two declarations under penalty of perjury setting forth:  (1) his firm's unique qualifications and expertise in this type of litigation, (2) the apparent corresponding lack of such expertise in the New Orleans market and (3) the reasonableness of the number of hours submitted by Bollinger in this matter.  (Rec. docs. 194-2 and 202-3).  In response, the government submitted... nothing.  Counsel for the government argues that local rates are more appropriate but submits nothing in the way of evidence to contradict either of Mr. Sweet's declarations.  This is insufficient to contest Bollinger's position.

---

[5] Bollinger also represents to the Court, without contradiction, that all depositions in this case save one have been taken in Washington D.C. and the one that was taken elsewhere occurred in New Hampshire.  (Rec. doc. 194-1 at p. 5).

The Fifth Circuit has previously found a similar failure to adduce record evidence to "refute or challenge" a declaration supporting a party's request for out-of-district rates to be fatal to such a challenge. *McClain*, 649 F.3d at 379. In fact, in *McClain*, the party opposing the use of out-of-district rates actually submitted declarations of five in-district lawyers concerning the rates they would have charged in that case, but because none of them "claimed that they, or anyone else they knew, would have been willing and able to get involved" in the case upon its inception, the Court found the fee applicant's declaration to be "uncontested." *Id.* In this case, the government has not even provided the Court with evidence of questionable probity – it provided nothing.[6] As such, this Court considers Bollinger's application and the evidence submitted in support thereof to be abundant and uncontradicted and therefore will recommend that the District Judge award a reasonable rate for Bollinger's counsel in their home district of Washington D.C.

This is not to say, however, that simply because the "locale" question is decided in favor of Bollinger that the Court is constrained to award the rates requested in this case, as it is still incumbent upon the Court to determine whether those rates are reasonable under the circumstances. After close review of the record and the declarations of Mr. Sweet, the Court finds a small downward adjustment to be appropriate.

In support of its application, Bollinger stressed, both in brief and in Mr. Sweet's original declaration, that Wiley Rein charged Bollinger discounted rates and that those discounts became "deeper" during the course of a given year, based on total billing volume

---

[6] Rather than submit countervailing evidence, the government makes the rather novel argument in its sparse 10-page brief that that this Court should dismiss Bollinger's application without prejudice so that Bollinger can re-submit another application using in-district rates. (Rec. doc. 199). That approach is both inefficient and inappropriate, especially given the Supreme Court's well-known and oft-repeated admonition that "[a] request for attorneys' fees should not result in a second major litigation." *Hensley*, 461 U.S. at 437, 103 S.Ct. at 1941. Rather than heed this admonition, the government actually and expressly invites more litigation. This Court declines that invitation.

for that year.  (Rec. doc. 194-2 at p. 9).  In its submission, for each lawyer for whose time

Bollinger seeks to recover fees, there are a number of rates listed.  (*Id.*).  For instance, for

Mr. Sweet, the rates are $505/hour for June 2013; $490/hour for July-October 2013; and

$560/hour for January-April 2015.  (*Id.*).  This pattern holds true for all Wiley Rein counsel

listed in the declaration.  At oral argument on this motion, counsel for Bollinger confirmed

that the lower rate charged to Bollinger for the July-October 2013 period reflected a

"volume discount" that was triggered in July when his firm reached a negotiated level of

total billings to Bollinger (which is consistent with Mr. Sweet's declaration).

　　　The Court finds, based upon this evidence, that the lower, discounted rate charged

to Bollinger by the Wiley Rein attorneys in the July–October 2013 period is the appropriate

rate to be employed for the entirety of the work done in connection with the underlying

discovery dispute.  The Court finds that the government, as the opposing party here, should

not be subject to the vagaries of a negotiated fee arrangement between Bollinger and its

counsel that is based on billing volume over the course of a given year (and which may or

may not be driven by fees paid in this litigation alone).  The question here is what rate is

objectively reasonable and appropriate.  The lion's share of the work done by counsel in

connection with the subject motion was done in the period during which Wiley Rein

charged Bollinger its most discounted rate.[7]  If Bollinger and its counsel were satisfied that

the discounted rate charged during that time was reasonable and appropriate for the work

---

[7] While the Court understands that as a practical matter, the passage of time while this matter was on appeal might understandably result in counsel charging a higher rate to their client once the matter was remanded, it nonetheless finds that the rate charged while the vast majority of the work was completed is more emblematic of what is reasonable in these circumstances.  Most, if not all, of the post-remand work concerned opposing the government's appeal of the Magistrate Judge's order on the underlying motion to compel, which was issued in 2013.

being done (a conclusion easily inferred from the evidence), then as far as this Court is concerned, the objectively reasonable rate for this work is established.[8]

Accordingly, the Court will recommend use of the following hourly rates in computing the lodestar in this matter:

| | |
|---|---|
| Mark Sweet: | $490 |
| Roderick Thomas | $516 |
| Stephen Obermeier | $464 |
| Shane Kelly | $280 |
| George Petel | $280 |
| Michael Colson (Paralegal) | $197 |

### 2.    *The Reasonable Hours Expended*

#### A.    <u>Documentation of the Hours</u>

To determine the lodestar, the Court must multiply the reasonable hourly rates by the reasonable number of hours expended in the matter. *Wegner v. Standard Ins. Co.,* 129 F.3d 814, 822 (5th Cir. 1997). This calculation requires not only a determination of whether the total number of hours claimed were reasonable but also whether the particular hours claimed were reasonably expended. *Id.* It is the applicant's burden to present adequate documentation of the hours reasonably expended. *Id.* (*citing Louisiana Power and Light Co.,* 50 F.3d at 324).

As a threshold matter, the Court notes that Bollinger's application is not accompanied by contemporaneous time sheets, actual billing records or a declaration from each attorney detailing the work done, the number of hours expended, and the number of

---

[8]   That these discounted rates are reasonable in the Washington D.C. market is further supported by Mr. Sweet's declaration and the exhibits attached to the fee application, most notably the placement of Wiley Rein's rates in the National Law Journal's survey of rates among numerous Washington D.C. law firms, *curricula vitae* of the attorneys involved and the statements of Mr. Sweet concerning his firm's relative expertise in the subject matter of this litigation, all of which are unobjected-to. (Rec. docs. 194-2 and 194-3).

hours claimed.  Rather, Bollinger submitted a "summary report" of what Mr. Sweet declares were the hours reasonably expended on the underlying discovery dispute.  (Exhibit "C" to Bollinger's application, rec. doc. 194-3 at p. 23).  Curiously, given that it is a summary of hours submitted for purposes of this application, a great deal of information is redacted. (*Id.*).  While this submission lacks the level of detail that this Court would prefer in assisting it in its current task, it is at least sufficient under Fifth Circuit precedent to carry Bollinger's initial burden of documenting its claim.

The Fifth Circuit has approved fee applications with less robust documentation.  For instance, in *Wegner, supra*, the Court accepted as adequate documentation it considered "marginal at best" and even "arguably inadequate."  *Wegner*, 129 F.3d at 822-23.  The *Wegner* Court's discussion of the documentation in that case is instructive here:

> [The documentation consists of] (1) a computer printout listing the number of hours expended by and hourly rates of the attorneys who worked on the case; and (2) an affidavit from lead counsel reflecting her credentials and her view that the attorneys' fees on the printout were reasonable and necessary in the prosecution of the case.   We note, particularly, the absence of any time sheets or descriptions of the work done.   Although Wegner's documentation was sparse, we cannot say that it was so vague or incomplete that the district court was precluded from conducting a meaningful review of whether the hours claimed on this litigation were reasonably expended.   *See League of United Latin American Citizens # 4552 v. Roscoe Indep. School Dist.*, 119 F.3d 1228, 1233 (5th Cir. 1997).  Other than identifying the glaring holes in Wegner's documentation (e.g., the nondescriptive billing), Standard has not provided us (nor did it provide the district court) with detailed information explaining why or how the total number of hours claimed were not reasonable.
>
> *Id.* (footnotes omitted).

While Bollinger's documentation is less-than-ideal, it at least comports with the minimum requirements articulated by the *Wegner* Court and, as in that case, the government here has done no more than to argue about its insufficiency. Accordingly, while Bollinger's documentation leaves something to be desired in terms of clarity and completeness, which will be discussed below, it has met its threshold obligation of supporting its application with regard to the reasonableness of the hours expended.

B.   Reasonableness of the Hours

Turning to the reasonableness of the hours claimed, the Court is guided initially by the notion that "the result is what matters." *Hensley*, 461 U.S. at 435, 103 S.Ct. at 1940. Here, the Court finds that in almost all respects, Bollinger prevailed when it mattered. While the District Judge eventually granted the government's appeal of the Magistrate Judge's order, she did so primarily because the government's multiple eleventh-hour productions mooted almost all of the relief provided for in that order, save for about two dozen documents (out of an originally withheld 776) that the Magistrate Judge did not actually review prior to ordering production. Specifically, the District Judge stated:

> The Court recognizes, however, that in producing previously withheld documents and revising its privilege logs, the government has effectively conceded that Bollinger's motion to compel was well-founded. Indeed, as noted above, the government has produced approximately half of the documents it originally withheld. Further, it did so only after the Magistrate Judge repeatedly ordered the government to provide Bollinger with revised privilege logs, and nearly two years after the court-ordered deadline. Thus, although the Court vacates the Magistrate Judge's order compelling the government to produce all 776 of the previously withheld documents, the Court nevertheless finds that Bollinger is entitled to the costs, including reasonable attorney's fees, it incurred in litigating this issue. See Fed. R. Civ. P. 37(a)(5) ("If

> the motion [to compel] is granted--or if the disclosure or requested discovery is provided after the motion was filed--the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion . . . to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees.").

(Rec. doc. 188 at pp. 11-12).

Based upon this record, the Court finds that, despite vigorous – and often unfounded – opposition throughout the process while being presented with ever-changing iterations of the government's privilege logs, Bollinger was almost completely successful in its efforts to obtain the subject discovery.

> Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee.  Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified.

*Hensley*, 461 U.S. at 435, 103 S.Ct. at 1940.

It cannot be seriously argued that Bollinger achieved anything other than an excellent result here; it follows they are entitled to a fully compensatory fee under the law.

The Court has already discussed the requirements for documenting a fee request such as this and found that Bollinger's documentation, while less than ideal, is at least sufficient for the Court to meaningfully assess the reasonableness of the hours expended. The next inquiry then is whether counsel exercised "billing judgment."  Here, the Court looks to whether Defendants' counsel discharged their obligation to "make a good faith effort to exclude from [their] fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission."  *Id.* at 434, 103 S.Ct. at 1939-40.

15

With regard to the reasonableness of the hours expended, the government has objected to Bollinger's application on a number of grounds, albeit in perfunctory fashion.[9] First, it argues that many of the hours claimed by Bollinger are not compensable because they "were incurred on tasks other than 'making' the underlying motion." (Rec. doc. 199 at pp. 6-7). To the extent the government is arguing that any tasks necessarily <u>related to</u> the actual drafting of the motion are not compensable here, the argument ignores the clear language of the District Judge's order and common sense.

The District Judge, citing Rule 37, very clearly ordered that Bollinger is "entitled to the costs, including reasonable attorney's fees, it incurred in <u>litigating this issue.</u>" (Rec. doc. 188 at p. 12). "Litigating" this issue must necessarily include the work prerequisite to bringing a discovery motion under the Rules, such as investigation and analysis of both the documents produced and the numerous privilege logs submitted; legal research concerning the government's position (especially given the unusual and later withdrawn claims of deliberative-process and source-selection privileges); conferences with opposing counsel concerning disputes; and, finally, drafting of the pleadings themselves.

Ultimately, Bollinger argues that the underlying work was made more time-consuming than it otherwise would have been due to the ever-changing position of the government vis-à-vis its privilege claims. The record is clear that, in many cases, the government would issue a "superseding" privilege log and produce previously withheld documents, only to quickly follow with yet another superseding log and more documents.[10] It is not entirely possible for this Court to easily assess just what effect all of this activity

---

[9] All of these objections are set forth in a mere two pages in the government's opposition memorandum.
[10] *See, e.g.*, Exhibits 1-3 to Bollinger's Supplement Memorandum in Opposition to the government's Motion for Appeal/Review of Magistrate Judge's Decision to District Court (Rec. docs. 191-1 at 1-7).

had on Bollinger's motion-related efforts, but the Court simply cannot credit the government's mere <u>argument</u>, supported by no evidence, that the hours expended were unreasonable.   The reasonableness of Bollinger's application in this regard cannot be evaluated in a vacuum and the record before the Court here tends to support the claimed necessity of the work performed in general.

However, this is not to say the application does not suffer from other maladies, some of which have been raised by the government.   Specifically, the government argues that many of the entries in the application are vague and duplicative and also complains that the submission is rife with "block billing."[11]   (Rec. doc. 199 at p. 8).   Having closely reviewed the entirety of Bollinger's submission, the Court agrees – to an extent – with the government as to these objections.

First, there are a number of vague billing entries.   Here are some examples:

- "Prepare for conference re privilege issues; conference with Messrs. Sweet, Obermeir, and Thomas re privilege issues. . .
- [C]onfer with Mr. Obermeier re privilege issues. . .
- [C]onfer with team re motion to compel and motion for sanctions. . .
- Draft email re privileged documents. . .
- Research issues for motion to compel re privilege log.

(Rec. doc. 194-3 at pp. 23, 24, 26, 27, 31).

While these are not "block-billed" entries in the classic sense, they do not provide the level of detail necessary for this Court to ascertain exactly what tasks were being undertaken and whether the time expended on them was reasonable.

---

[11]   The term "block-billing" refers to the disfavored "time-keeping method by which each lawyer and legal assistant enters the groups of time spent working on a case, rather than itemizing the time expended on specific tasks."   *International Transport Workers Federation v. Mi–Das Line, SA*, No. 13-CV-0454, 2013 WL 5329873 at *4 (E.D. La. Sept. 20, 2013)(citing *Canon USA., Inc. v. S.A.M., Inc.*, No. 07-CV-1201, 2009 WL 35334, (E.D. La. Jan. 6, 2009)).

Moreover, as pointed out by the government, there are some duplicative or "redundant" entries in Bollinger's submission, most of which involve either conferences with multiple members of the litigation "team" or tasks associated with supervision of lower-level attorneys by upper-level ones.   While this Court does not believe such cooperative work between lawyers is or should be *per se* non-compensable, many of the entries lack the detail necessary to allow the Court to ascertain whether and to what extent it was reasonable for multiple lawyers to participate in the same task(s).

Finally, as pointed out earlier, Bollinger's summary report is replete with redactions, which the Court fails to comprehend, given that it is a summary report and not a set of actual bills.  Notably in this regard, Mr. Sweet states in his declaration that:

> [p]roper billing judgment was also exercised to further reduce the number of hours related to Bollinger's motion to compel. For example, each attorney carefully reviewed their time entries line-by-line and with respect to entries with multiple activities, estimated time spent working only on the privilege log dispute at issue here.

(Rec. doc. 194-2, p. 10).

The problem is that, while the Court accepts Mr. Sweet's uncontradicted declaration that the attorneys on his team attempted to exercise billing judgment, the fact that all of the "excluded" work has been redacted in his submission really makes it impossible for this Court to fully confirm that that billing judgment was exercised to the fullest extent possible. For all these reasons, the Court finds that the hours requested by Bollinger should be reduced.

A review of the case law reflects that the preferred method for reducing fee awards for the shortcomings described above is a flat reduction of a specific percentage from the award.  *See, e.g., Mi–Das Line, SA*, 2013 WL 5329873 at *4 (reducing fee award 25%);

*Delgado v. Village of Rosemont*, No. 03-CV-7050, 2006 WL 3147695 at *7 (N.D. Ill. Oct. 31, 2006)(reduction of total fees by 35% for vagueness, block billing and lack of detail); *Phoenix Four, Inc. v. Strategic Resources Corp.*, No. 05-CV-4837, 2006 WL 2135798 at *2 (S.D. N.Y. Aug. 1, 2006)(fee award reduced by 25% for block billing); *Ass'n of Holocaust Victims for Restitution of Artwork and Masterpieces v. Bank Austria Creditanstalt*, No. 04-CV-3600, 2005 WL 3099592 at *7 (S.D. N.Y. Nov. 17, 2005)(reduction of award by 25% for block billing, excessive hours, and vagueness in time entries).

This Court finds such an approach is appropriate here and will recommend that the total number of hours submitted by Bollinger be reduced by 35% for vagueness and duplication.

Finally, as noted earlier, once the presumptively reasonable lodestar has been determined, the Court must then consider the applicability and relative weight of the 12 *Johnson* factors.   488 F.2d at 717-19.   While the Court may make upward or downward adjustments to the lodestar figure if the *Johnson* factors so warrant, the lodestar is presumptively correct and should be modified only in exceptional cases.   *See Watkins*, 7 F.3d at 453.   Here, the Court has considered the evidence and the record against each of the *Johnson* factors and concludes that no upward or downward adjustments are warranted. Accordingly, none will be recommended.

   IV.   **RECOMMENDATION**

Applying the foregoing reduction to the hours submitted and the rates recommended above, the Court herein recommends a total amount in reasonable attorneys' fees of **$85,903.22** be awarded to Bollinger and against the government, payable within thirty days, as calculated below:

19

| Attorney | Total hours | Rate | Total fee before reduction | Recommended fee after 35% reduction |
|---|---|---|---|---|
| Mark Sweet | 32.5 | $490 | $15,925 | $10,351.25 |
| Roderick Thomas | 15.75 | $516 | $8,127 | $5,282.55 |
| Stephen Obermeier | 153.2 | $464 | $71,084.80 | $46,205.12 |
| Shane Kelly | 77.2 | $280 | $21,616 | $14,050.40 |
| George Petel | 21.25 | $280 | $5,950 | $3,867.50 |
| Michael Colson | 48 | $197 | $9,456 | $6,146.40 |
|  |  |  | **TOTAL AWARD RECOMMENDED** | **$85,903.22** |

A party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in a magistrate judge's report and recommendation within fourteen days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United States Auto. Assoc.*, 79 F.3d 1415 (5th Cir. 1996) (*en banc*).

New Orleans, Louisiana, this 28th day of May, 2015.

MICHAEL B. NORTH
UNITED STATES MAGISTRATE JUDGE